No. 18,139.

WILLIAM J. RHODES, ET AL. *v.* JOHN HABERSTICH, ET AL.

(326 P. [2d] 657)

Decided June 9, 1958.

Messrs. BOYLE & WITTY, for plaintiffs in error.

Messrs. SHERMAN & GLASTON, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties appeared in inverse order in the trial court. We will refer to them as they there appeared or as purchasers and sellers.

Plaintiffs John and Dorothy Haberstich instituted suit for the return of a $1000 deposit made by them in connection with a purchase and sale agreement. Defendant Hotels, Inc. acted as broker in the transaction between the plaintiffs as purchasers and the defendants Rhodes as sellers of "the furniture, furnishings, equipment and business of the Hand Hotel of Fairplay, Colorado." The complaint alleged fraud and misrepresentation by the defendants as an inducement to the plaintiffs to enter into the agreement. Trial was to a jury. At the close of plaintiffs' evidence they were permitted, over objection, to amend their complaint by adding a second count alleging that the agreement for purchase and sale was void for lack of mutuality and want of consideration. Plaintiffs' counsel then moved for a directed verdict predicated upon the second count of the camplaint as amended. The court did not rule on the motion until the defendants had presented their defense, but at the close of all of the evidence directed a verdict for plaintiffs, ruling that the contract was void for want of consideration and lack of mutuality and instructed the foreman of the jury to sign in a verdict for the amount of the $1000 deposit.

Several grounds for reversal are urged by plaintiffs in error, among which are that the trial court erred in allowing an amendment to the complaint, and again in directing a verdict in favor of the plaintiffs. By this writ of error they seek reversal of the judgment against them.

Since we are of the opinion that the court erred in its interpretation of the contract, we find it unnecessary to comment on the propriety of permitting the amendment to the complaint.

The full text of the contract involved is as follows:

## "AGREEMENT TO PURCHASE AND TO SELL

Denver, Colorado, August 22, 1950

"This agreement entered into at Denver, Colorado on this 22nd day of August, 1950, between William J. Rhodes and Eva Rhodes hereinafter referred to as parties of the first part and John Haberstich and/or Dorothy D. Haberstich hereinafter referred to as parties of the second part, all parties of the town of Fairplay, County of Park, State of Colorado;

"WITNESSETH:   That parties of the first part being the owners of the furniture, furnishings, equipment and business of the Hand Hotel of Fairplay, Colorado and being desirous of selling same and parties of the second part being desirous of purchasing the same, said sale and purchase are agreed upon and will be made subject to the following terms and conditions.

"The sale price of the above described personal property and business and a lease on the building shall be the sum of Ten Thousand Dollars ($10,000) payable as follows. Upon the signing of this agreement the sum of One Thousand Dollars ($1,000). Upon the closing of this transaction according to the terms of this agreement the additional sum of Four Thousand Dollars ($4,000). The balance in the sum of Five Thousand Dollars ($5,000) Hotels, Inc. with the cooperation of parties of the first part shall undertake to finance on terms formerly explained to parties of the second part.

"Promptly upon the signing of this agreement by all parties hereto the furniture, furnishings and equipment shall be invoiced as shown, the only exceptions being articles belonging to guests and such other personal articles as are agreed upon as belonging to parties of the first part, and upon closing of this transaction shall be delivered as invoiced.

"Closing of this transaction according to the terms of this agreement shall be on or before September 1, 1950, unless additional time is required for financing but in

any event parties hereto shall not be bound beyond September 10, 1950.

"Rents of guests, taxes, insurance and other items of income or expense incident to the operation of the Hand Hotel shall be adjusted to date of closing.

"Transfer of the above described personal property shall be by bill of sale showing same to be free of all encumbrance.

"Parties of the first part agree to issue to parties of the second part a lease on the Hand Hotel building and premises for a period of five (5) years from date of closing at a monthly rental of $175.00. Parties of the first part also agree to attach to the lease an option for an additional five (5) years at the same terms and conditions as set out in the original lease except that the rent for the second lease term shall be determined sixty (60) days prior to the end of the first lease term. Further, it is mutually agreed that as a part of the lease and option there shall be included an option to purchase the building upon payment or arrangements to pay an additional Twenty Five Thousand Dollars ($25,000).

"It is a condition of this contract and transaction that parties of the first part bind themselves not to reenter the hotel or restaurant business in Fairplay, Colorado during the ten (10) year term set out in this contract.

"Hotels, Inc. is recognized as the broker in this transaction and as such shall be paid for services by parties of the first part according to separate memo.

"The deposit of One Thousand Dollars ($1,000) made by parties of the second part upon the signing of this agreement shall upon the closing of this transaction according to the terms herein set out be applied as a portion of the purchase price. This One Thousand Dollar ($1,000) deposit is held in trust by the broker. However, should parties of the second part be ready, able and willing to close according to the terms herein set out and parties of the first part should either fail or refuse so to do, the said One Thousand Dollars ($1,000) shall

be returned in full by the broker to parties of the second part. Further however, should parties of the first part be ready, able and willing so to close and parties of the second part should either fail or refuse so to do, then in that event the One Thousand Dollars ($1,000) shall be retained as liquidated damages equally by parties of the first part and by the broker.

"Parties to this agreement have read, understand and agree to the terms of this agreement and as evidence of such understanding and agreement attach their signatures hereto on the day and date first above written.

Signed   *William J. Rhodes*
William J. Rhodes
Signed   *Eva Rhodes*
Eva Rhodes
Signed   *John Haberstich*
John Haberstich
Signed   *Dorothy D. Haberstich*
Dorothy D. Haberstich

"WITNESS:
HOTELS, INC.
"BY:   Signed   H . E. Hugh."

Plaintiffs contend, and the trial court held, that the next to the last paragraph of the contract rendered the entire document wholly lacking in mutuality. They argue that this paragraph gives defendants the absolute and unconditional right to refuse to close the deal according to the terms, but that the purchasers were bound, and if they failed to complete the deal they forfeited the $1000. An analysis of the paragraph standing by itself without more, might tend to support plaintiffs' contention and furnish a basis for the findings of the court. The agreement, however, must be read in its entirety. We cannot agree that the paragraph providing for the return of the $1000 to the purchasers in the event of default of the sellers relieved the sellers of their obligations under the contract and permitted them to repudiate the contract at will. Obviously if the sellers

failed to complete the deal, the buyers were entitled to the return of their money if they elected to pursue that remedy, and the embodiment of this right in the agreement does not render other portions of the contract unenforcible. Nor does this paragraph vitiate the rights the purchasers would have to compel performance of the contract according to its terms or to seek damages for the breach thereof. Nowhere do we find in the contract a provision that the sellers had the right at any time to refuse to consummate the deal without obligation or if they did that the contract would be null and void or of no force and effect. On the other hand we do find that the agreement by its terms expresses the unequivocal promise on the part of the defendants to sell and on the part of the plaintiffs to buy. In addition, the sellers agreed to do other things, to-wit: To lease the hotel building, which they owned, for a period of five years at an agreed rental, to include in the lease an option for renewal for five years at a rental to be determined prior to the renewal date, and to give the Haberstitches an option to purchase the hotel building for the sum of $25,000. They agreed not to reenter the hotel and restaurant business in Fairplay for a period of ten years. These promises are binding, and the provision of the contract that upon their failure to keep them the $1000 should be returned is not an exclusive remedy and does not relieve them of other obligations under the instrument. Thus the mutual promises of the parties constituted a good consideration. See *Hoagland v. Murray,* 53 Colo. 50, 123 Pac. 664, wherein the court said:

" * * * A promise is a good consideration for a promise, when they are mutual; that is, reciprocal, and impose upon each of the parties a legal binding obligation which each can enforce against the other. * * * " See also *Stiles v. McClellan,* 6 Colo. 89.

The plaintiffs abandoned their claim of fraud, and a reading of the record discloses a total lack of evidence to support such claim even had it been submitted to the

jury. The court having entered an erroneous judgment predicated upon an incorrect interpretation of the contract, nothing remains to be retried in this action, hence the judgment is reversed and the cause remanded to the trial court with directions to dismiss the complaint and to enter judgment for the defendants.