Arthur J. HARRIS, Plaintiff–Appellant,

v.

Gordon N. HANSON, Gary M. Heil and Kathleen N. Heil, Defendants–Appellees.

No. 89CA2121.

Colorado Court of Appeals,
Div. II.

Feb. 28, 1991.

As Modified on Denial of Rehearing
April 4, 1991.

Certiorari Denied Jan. 13, 1992.

Thomas E. Henry, Englewood, George I. Katz, Denver, for plaintiff-appellant.

Podoll & Podoll, P.C., Robert C. Podoll, Denver, for defendants-appellees.

Opinion by Judge JONES.

Plaintiff, Arthur J. Harris, appeals from a judgment in favor of defendants, Gordon N. Hanson, Gary M. Heil, and Kathleen N. Heil, entered by the trial court finding plaintiff liable for breach of contract for the purchase of real property. We affirm.

Defendants were the joint owners of a duplex in Greenwood Village. On November 2, 1984, plaintiff and defendants entered into a contract for the purchase and sale of the duplex for the purchase price of $147,500. The contract provided for plaintiff, as purchaser, to have access to the property, for inspection purposes, prior and up to the execution of the contract. Additionally, the contract contained an engineering inspection contingency to be completed prior to the closing on the property.

On November 16, 1984, plaintiff released the inspection contingency after finding the property to be to his satisfaction. However, shortly thereafter, plaintiff alleged several defects in the property and, subsequently, notified defendants of those defects by letter dated November 26, 1984.

Thereafter, on December 3, 1984, plaintiff caused tenants of one of the property duplex units to vacate the premises without the express permission of defendants.

Closing on the property was set for December 14, 1984, at which time plaintiff was present and had in his possession three checks, one for the amount of the remaining tenant's security deposit, one representing the purchase price minus the sum of $22,536, and the third in the amount of $22,536. At the moment of closing, plaintiff sought to have the purchase price reduced by $22,536, and to close the transaction with the second check. In the alternative, he sought to establish an escrow account in the amount of $22,536 with the third check to allow renegotiation of the purchase price at a later date. When defendants' attorney, who was their representative at the closing, refused to comply with plaintiff's requests, the sale did not close. Plaintiff then recorded the contract as a lien against the subject property.

I.

Plaintiff first contends that the trial court erred in finding that he breached the contract. He asserts that the trial court's finding that defendants properly tendered performance is not supported by substantial evidence and is clearly erroneous. We disagree.

When obligations of a contract are mutual and concurrent, neither party is discharged from complete performance until each has tendered performance as obligated under the contract and demanded performance of the other. *Hoagland v. Murray*, 53 Colo. 50, 123 P. 664 (1912).

Here, the trial court found that defendants had materially and substantially complied with the requirements placed on them by the contract by executing the warranty deed and submitting it to the title insurance company. Since that finding is amply supported by the record, it will not be disturbed on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## II.

Plaintiff next contends that the trial court erred in not finding that defendants' breach of the contract was the cause of plaintiff's failure to close the sale. More specifically, plaintiff asserts that defendants violated provisions of the contract stating that he be given the opportunity to inspect the premises prior to closing; that he be given keys and a copy of the lease; that the security deposit would amount to $1,000; and that the seller should provide marketable title to the property. We disagree with plaintiff's contention.

■ Here, the trial court specifically found "that the purchaser [plaintiff] refused to close because he was denied an opportunity to renegotiate the purchase price either before closing, or pursuant to an escrow arrangement after the closing." The court further found "that the purchaser did not refuse to close as a result of the condition of the warranty deed, or the inability to inspect, or the availability of the keys, or the availability of the copy of the lease, or the combination of the above."

The record reflects that after plaintiff accepted the condition of the property and released the inspection contingency, he attempted to renegotiate the contract as indicated in two letters sent by him to defendants prior to the closing date which addressed items that had been specifically accepted by him. Also, defendant Gary Heil testified that plaintiff attempted to arrange a meeting at the property in order to renegotiate the contract.

The record also reflects that plaintiff was provided access to the property. Testimony by the property manager established that he was available to provide access to plaintiff up to and including the time of closing. There was also testimony indicating that the keys and a copy of the contract were available to plaintiff at the time of closing.

Furthermore, testimony by defendants' attorney supports the trial court's finding that plaintiff had notice, and acknowledged by his actions, that an adjustment to the security deposit was to be made in view of the vacancy caused by plaintiff.

Since these findings are supported by the record, we may not disturb them on appeal, *Page v. Clark, supra,* and thus, plaintiff was not relieved from the provisions of the contract. *See Newhouser v. Sancetta,* 157 Colo. 353, 402 P.2d 613 (1965).

■ Finally, we reject plaintiff's assertion that defendants failed to provide marketable title because the legal description found in the contract did not match the legal description in the warranty deed. Pursuant to stipulation of the parties, the legal description in the warranty was correct and, as a consequence, was insured by the title insurance company. Moreover, even if the legal description was not correct, in view of *O'Hara Group Denver, Ltd. v. Marcor Housing Systems, Inc.,* 197 Colo. 530, 595 P.2d 679 (1979), in which it was held that a tender and demand by purchaser is essential if a defect in seller's title may be cleared, defendant is foreclosed from asserting this defense.

## III.

Plaintiff's final contention is that the trial court erred in finding that he was in violation of the statute which prohibits the recording of spurious liens or the filing of forged or groundless documents and in awarding damages of $1000 per day until the encumbrance is removed, in addition to attorney fees. We disagree.

Section 38–35–109(3), C.R.S. (1982 Repl. Vol. 16A) provides as follows:

"Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to create a lien against real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees. Any grantee or other person purportedly benefitted by a recorded document which creates a lien against real

property and is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid who willfully refuses to release such document of record upon request of the owner of the real property affected shall be liable to such owner for the damages and attorney fees provided for in this subsection."

*See Soneff v. Harlan,* 712 P.2d 1084 (Colo. App.1985).

For purposes of § 38–35–109(3), the parties have treated the encumbrance created by the recorded contract for purchase and sale as a "lien." As to this case we shall do so also.

 While the statute does not define "groundless," we agree with the trial court that, for purposes of § 38–35–109(3), a "groundless" document is one as to which a proponent can advance no rational argument based on evidence or law to support his claim of a lien. *See International Technical Instruments, Inc. v. Engineering Measurements Co.,* 678 P.2d 558 (Colo. App.1983).

When this definition is applied to the contract in question here, we conclude that the contract is groundless. As the trial court found, with record support, because plaintiff refused to close the transaction for the agreed upon purchase price, he knew the contract was no longer valid or in existence. Thus, at the time of the recording of the contract he knew or had reason to know that it presented a false claim to purchase the property, and was, therefore, groundless.

Furthermore, even if it could be argued that the contract was not groundless at the time it was recorded, it became groundless as the basis for a lien when, in 1987, plaintiff relinquished his specific performance claim for relief. He therefore violated § 38–35–109(3) by his failure to "release such document of record" which created a lien upon the subject property.

Additionally, the trial court found that the defendants made repeated requests to plaintiff to remove the cloud on the title of the property. Thus, the trial court did not err in ruling that plaintiff had violated

§ 38–35–109(3) and in awarding damages therefor.

The judgment is affirmed.

SMITH and RULAND, JJ., concur.