**Janet E. HOHN, Plaintiff–Appellant and Cross–Appellee,**

v.

**Michael J. MORRISON, Defendant– Appellee and Cross–Appellant.**

No. 92CA0069.

Colorado Court of Appeals, Div. V.

July 1, 1993.

Rehearing Denied Aug. 19, 1993.

Certiorari Denied March 21, 1994.

Jesse N. Lipschuetz, P.C., Jesse N. Lipschuetz, Denver, for plaintiff-appellant and cross-appellee.

Myers, Hoppin, Bradley & Devitt, P.C., Charles T. Hoppin, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge ROTHENBERG.

Plaintiff, Janet E. Hohn, appeals from the judgment of the trial court entered in favor of defendant, Michael J. Morrison. Defendant cross-appeals that portion of the judgment denying his request for interest and attorney fees. We affirm in part, reverse in part, and remand with directions.

In 1978, Hohn purchased approximately 72 acres of vacant land from Morrison. As partial payment for the property, Hohn executed and delivered to Morrison a promisso-

ry note for $62,000, secured by a deed of trust (the Morrison note and deed of trust). The note was payable on a monthly basis with a balloon payment due February 1, 1988.

In exchange for the note, Morrison executed and delivered to Hohn a general warranty deed. However, her title was subject to Morrison's deed of trust (the Morrison deed of trust) and also to a prior lien, *i.e.,* a first deed of trust in favor of a third party (the Berry and Stark note and deed of trust).

Over the years, Hohn's payments to Morrison were consistently late and several of her payment checks were returned for insufficient funds. As a result, Morrison began to hold many of the checks for long periods of time before depositing them. Without Morrison's consent, Hohn then began to send her payments on a semi-annual basis.

Subsequently, and without notice to Hohn, Morrison began foreclosure proceedings. However, Hohn cured the foreclosure by sending a check for payments due.

Thereafter, Hohn again began sending her checks late and, again, several checks were returned for insufficient funds. The trial court found that both parties "ignored the provisions of the note and the agreement between them" and that both had caused a "bookkeeping nightmare."

In 1982, Morrison paid off the Berry and Stark note and received the original promissory note, deed of trust, and executed request for release of deed of trust. However, he failed to take steps necessary to release the Berry and Stark deed of trust until *1990.*

In November 1987, Hohn obtained a loan commitment from a bank in order to allow her to make the balloon payment due on February 1, 1988. The bank loan to Hohn required release of the Berry and Stark deed of trust. Although she and her attorney subsequently sent Morrison letters requesting a payoff amount, he did not respond.

In January 1988, Hohn and the bank entered into an escrow agreement calling for a special account to hold the loan proceeds. In February 1988, the bank informed Morrison that the funds were being held in an escrow account and would be released to him upon presentation of a release of the Berry and Stark deed of trust, which was the first lien on the property, and a release of the Morrison deed of trust, which was the second lien. Morrison did not respond to the bank's letter.

No further activity occurred until 1989, when Hohn attempted to sell the property. Although she entered into a written contract to sell, the sale did not occur because Morrison failed to provide a payoff figure.

Hohn then filed this quiet title action against Morrison and also sought damages for his failure to release both the Morrison note and deed of trust and the Berry and Stark deed of trust. Morrison filed a counterclaim seeking the balance due on the Morrison note and also seeking foreclosure on his deed of trust.

Following a bench trial, the court entered judgment in favor of Morrison in the amount of $37,824 and found that: (1) on February 1, 1988, Hohn had made a full legal tender of the amount due; (2) the reason the amount was not paid was Morrison's failure to provide a payoff figure; (3) once tender was made, Hohn was discharged from further liability for interest, costs, and attorney fees; (4) although there was a tender, there was no actual satisfaction of the indebtedness due under the note; (5) neither Colo. Sess. Laws 1987, ch. 277, § 38–35–124 at 1338–39 nor § 38–35–109(3), C.R.S. (1982 Repl.Vol. 16A) applied to the facts of this case; and (6) Hohn was not entitled to damages and attorney's fees.

The funds were subsequently deposited into the registry of the court pending this appeal.

## I.

Hohn first contends the trial court erred in concluding that Colo.Sess. Laws 1987, ch. 277, § 38–35–124 at 1338–39 is inapplicable and in denying her damages and attorney fees under that statute. We disagree.

Section 38–35–124, then in effect, provides in pertinent part:

> [W]hen all indebtedness ... secured by a lien on real property has been satisfied ...

the creditor or holder of the indebtedness shall, within ninety days after the satisfaction of the indebtedness and receipt from the debtor of the reasonable costs of procuring and recording the release documents ... file with the public trustee the documents required for a release....

■ The trial court concluded this section was inapplicable because, even though Hohn had made a legal tender, there had been no "satisfaction" of the note. We agree with this conclusion and reject Hohn's argument that no satisfaction is required under the statute.

■ If the language of a statute is plain and its meaning is clear, it must be interpreted as written. *See Baum v. Baum*, 820 P.2d 1122 (Colo.App.1991). Section § 38–35–124 clearly and unequivocally requires a satisfaction of an indebtedness before a creditor is required to file the documents necessary for a release.

Here, it is uncontroverted that there was no actual payment of the amounts due. Rather, the money was held in an escrow account pending Morrison's production of certain documents. Thus, there was no "satisfaction" of the debt, and we agree with the trial court's conclusion that § 38–35–124 was inapplicable. *Cf. Imperial Mortgage Corp. v. Travelers Indemnity Co.*, 43 Colo.App. 74, 599 P.2d 276 (1979) (the entire mortgage debt was satisfied when the full amount due was bid and accepted on the note). *See generally* 59 C.J.S. *Mortgages* § 448 ("A mortgage debt is satisfied by payment thereof in full by the person primarily liable.")

## II.

Hohn next contends the trial court erred in concluding that § 38–35–109(3) also was inapplicable to this case and in denying her request for attorney fees and damages under that statute. She asserts that Morrison's failure to release the *Morrison* note and deed of trust after her lawful tender of monies due under that note constituted a violation of the statute. We find no error in the trial court's conclusion that Hohn failed to prove damages, but we agree that the court erred in failing to award attorney fees.

### A.

Section 38–35–109(3) provides in pertinent part:

Any ... person purportedly benefited by a recorded document which creates a lien against real property and is forged or groundless, contains a material misstatement or false claims, *or is otherwise invalid* who *willfully* refuses to release such document of record upon request of the owner of the real property affected shall be liable to such owner for damages and attorney fees provided in this subsection (3). (emphasis added)

Here, the trial court found that the Morrison deed of trust was not forged, groundless, or otherwise invalid, and that it did not contain a material misstatement or false claim.

No party claims the document was forged.

A "groundless" document is "one as to which a proponent can advance no rational argument based on evidence or law to support his claim of a lien." *See Harris v. Hanson*, 821 P.2d 821 (Colo.App.1991) (plaintiff violated § 38–35–109(3) by his failure to release a contract which created a lien on defendant's property). And, although Hohn made a legal tender to Morrison, no money was actually paid to him in satisfaction of the debt. Since Morrison advanced a rational argument in support of his lien, we also agree with the trial court that his lien is not properly characterized as groundless.

However, we disagree with the trial court's conclusion that the Morrison deed of trust created a valid lien against Hohn's property at all relevant times.

Colorado has adopted the lien theory of mortgages under which the mortgage or deed of trust creates a lien against real property but does not convey title. Section 38–35–117, C.R.S. (1982 Repl.Vol. 16A); *see Colorado Real Estate Manual*, ch. 16 at 2 (1991).

■ Although this is an issue of first impression in Colorado, other jurisdictions which have adopted the lien theory of real estate mortgages have also adopted the rule that an unconditional tender of the amount due by the debtor releases the lien of the

mortgage unless the creditor establishes a justifiable and good faith reason for rejection of the tender. *Moore v. Norman,* 43 Minn. 428, 45 N.W. 857 (1890); *Renard v. Clink,* 91 Mich. 1, 51 N.W. 692 (1892); *Easton v. Littooy,* 91 Wash. 648, 158 P. 531 (1916) (tender of the full amount due operates to discharge the lien of the mortgage if the tender is refused without adequate excuse.). Under this rule, although the underlying debt remains enforceable, the lien of the mortgage is discharged. *See Easton v. Littooy, supra; Security State Bank v. Waterloo Lodge No. 102,* 85 Neb. 255, 122 N.W. 992 (1909).

We conclude that the same rule should be adopted in Colorado and applied in interpreting § 38–35–109(3). Our conclusion is buttressed by the General Assembly's declaration in § 38–34–101, C.R.S. (1992 Cum.Supp.) that:

> [I]t is the purpose and intention of articles 34 and 35 ... to render titles to real property and every interest therein more secure and marketable, and it is declared to be the policy in this state that this article ... shall be liberally construed. . . .

■ Therefore, we hold that the legal tender by the debtor, Hohn, followed by the failure by the creditor, Morrison, to respond to the tender *in any manner,* invalidated the lien pursuant to § 38–35–109(3) and permitted relief under the statute to the extent that Morrison's refusal to release the lien was willful. *See* Harris v. Hanson, supra.

### B.

We also agree with Hohn that Morrison's actions in failing to release his note and deed of trust were willful as a matter of law.

Although "willful" has not been defined within the context of § 38–35–109(3), we consider it appropriate to give it its plain and ordinary meaning. *See People v. Forgey,* 770 P.2d 781 (Colo.1989).

*Black's Law Dictionary* 1434 (5th ed. 1979) provides:

> A willful act may be described as one done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently.

*See also Pettingell v. Moede,* 129 Colo. 484, 271 P.2d 1038, 1042 (1954) (within automobile guest statute, willful action means "voluntary; by choice; intentional; purposeful").

Here, Morrison testified that because of Hohn's late and missed payments, and the bank charges which resulted, he was unable to determine the proper amount due. Thus, he claimed he had not provided a payoff figure because he lacked sufficient records to determine the amount due. According to Morrison, he needed Hohn's cancelled checks in order to determine the amount due.

However, the trial court specifically found that Morrison possessed the means to determine the exact payoff amount and was derelict in not doing so. And, after Morrison explained the eight-year delay surrounding release of the Berry and Stark note by testifying that he had misplaced his file containing the release of that note, the original note, and deed of trust until 1990 and recorded them after finding the documents, the trial court stated: "He just has a hard time getting things done within a reasonable period of time, I guess."

Despite these findings, the trial court concluded that Morrison did not act willfully. It stated:

> I am not convinced ... there was any willful and wanton conduct. And the reason I come to that conclusion, there was no gain in it for Mr. Morrison. . . . I just think he sloppily handled it.

■ Although we give great deference to findings of fact made by trial courts, we conclude that, here, the trial court applied an incorrect standard in analyzing whether Morrison acted willfully. Malicious intent is not required for willfulness. Nor must the offending party have actually gained anything by his or her actions. All that is required is that the party acted voluntarily, purposefully, and with a conscious disregard for the consequences of his or her conduct. *See Pettingell v. Moede, supra.*

Applying this standard to the circumstances here as found by the trial court, Morrison's conduct cannot be dismissed as mere negligence. He acted voluntarily, pur-

posefully and with a conscious regard for the consequences of his conduct. And, the trial court found no *justifiable* excuse. Accordingly, we conclude that Morrison's conduct here was willful as a matter of law, and that the trial court erred in denying Hohn's request for attorney fees under § 38-35-109(3).

However, with record support, the trial court also found that Hohn had failed to establish damages, and its decision to reject this claim was correct. *See Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970).

### C.

As an alternate ground for recovery of her attorney fees, Hohn contends the trial court also erred in denying her relief under § 38-35-109(3) for Morrison's failure to take the steps necessary to release the *Berry and Stark* deed of trust. However, since we have already concluded that she is entitled to reasonable attorney fees, we need not consider this contention.

### III.

On cross-appeal, Morrison contends that the trial court erred in denying his request for interest incurred after February 1, 1988, and in denying his request for attorney fees and costs. We disagree.

Section 4-3-604, C.R.S. (1992 Repl.Vol. 2) provides:

> (1) Any party making tender of full payment to a holder [of a note] when or after it is due is discharged to the extent of all subsequent liability for interest, costs, and attorney's fees.

> . . . .

> (3) Where the maker or acceptor of an instrument payable otherwise than on demand is able and ready to pay at every place of payment specified in the instrument when it is due, it is equivalent to tender.

 At trial, the court ruled that Morrison was not entitled to interest, costs, or attorney fees after February 1, 1988 because Hohn made a legal tender on the note on that date by making the escrow funds available to Morrison. The court further ruled that the funds were not released to Morrison because he failed to provide Hohn with the requested payoff statement.

We perceive no error in the court's conclusion. The record clearly supports the court's findings that Hohn was "able and ready" to pay him and had sufficient funds set aside in escrow to do so. This was tantamount to a tender, and, under these particular circumstances, it was sufficient to discharge Hohn from all liability for interest, costs, and attorney fees incurring after the date of tender.

That part of the judgment denying Hohn attorney fees is reversed, and the cause is remanded for further proceedings regarding such fees. The judgment is affirmed in all other respects.

RULAND and BRIGGS, JJ., concur.